## CELLULOID CORPORATION v. LIBBEY OWENS FORD GLASS CO.

### No. 1442.

District Court, N. D. Ohio, W. D.
Aug. 28, 1941.

DARR, District Judge.

1. This is a suit under Sections 4919 and 4921 of the Revised Statutes, 35 U.S. C.A. §§ 67, 70, wherein the plaintiff, Celluloid Corporation, a New Jersey corporation, charges infringement of claims 1 and 3 to 7 of United States Letters Patent No. 1,936,-044 granted November 21, 1933 to James F. Walsh, assignor to said Celluloid Corporation (R. 24, plaintiff's Exhibit 1).

2. Defendant, Libbey-Owens-Ford Glass Company, is a corporation under the laws of the State of Ohio, with an office and place of business at Toledo, Ohio within the Northern District of Ohio, Western Division (R. 24).

3. The Walsh patent in suit relates to laminated glass, commonly referred to as safety glass, and more particularly it relates to a product forming the inner or connecting layer between sheets of laminated glass.

4. Prior to Walsh it had generally been the practice to interpose between two glass sheets or plates a hardened sheet of preferably cellulose nitrate with volatile plastifier such as camphor. This hard layer was caused to adhere to the sheets or plates of glass by a gelatin binder. An objection to such laminated glass was due to the hardness of the sheet or layer. The binder was not always able to cause it to adhere uniformly throughout where irregularities existed. Other objections were that changes of temperature and stresses would cause the hard layers to separate from the glass sheets so that upon impact and breakage the glass would splinter and fly.

5. Walsh proposed to overcome these objections and defects in the prior art by providing an inner layer of soft, yieldable, plastic material which would more nearly conform to the irregularities of the adjacent sheets or plates of glass and would thus provide greater and more permanent and complete adhesion than in the case of a hard inner layer. This would prevent the glass from flying when struck by impact, and would absorb part of the impact and distribute it.

6. Patentee accomplishes this by using a large amount of non-volatile plastifier which at ordinary temperatures is a liquid. This does not reduce the flexibility of the layer whereby stresses and changes in temperature of the glass do not result in separation of the layer therefrom, but are compensated for by the yieldability of such inner layer.

Clifton V. Edwards and Frank A. Bower, both of New York City (Williams, Eversman, Morgan, of Toledo, Ohio, of counsel), for plaintiff.

Wm. J. Belknap and Whittemore, Hulbert & Belknap, all of Detroit, Mich., and Edwin J. Marshall, of Toledo, Ohio (Marshall, Melhorn, Davies, Wall & Bloch, of Toledo, Ohio, for defendant.

7. Walsh in making this layer contemplated the use of a cellulose derivative such as cellulose acetate or cellulose nitrate. The plastifier employed is of non-volatile character such as dibutyl phthalate, dimethyl phthalate, dibutyl tartrate, triacetin and phthalic acid esters. However, Walsh expressly recognizes that any appropriate plastifier which is a relatively non-volatile solvent may be employed.

8. Defendant admits that its products exhibits B to G contain a certain cellulose derivative, cellulose acetate, expressly recited in the claims, and that it uses a large proportion of a non-volatile plastifier, but asserts that the plastifier used is dimethyl phthalate. That since this plastifier is not expressly set out in the claims, infringement is avoided. But, if the plastifier used by defendant is the equivalent of those recited in the claims, then infringement is not avoided, within the range specified, by the simple expedient of merely substituting one old and well known plastifier for another. For one thing to be the equivalent of another it must produce the same function in substantially the same way. Again the range of equivalents is determined by the character of advance of the invention in the art, pioneer inventions receiving a much wider range of equivalents than mere improvements. However, every invention has some range of equivalents. Even improvement patents have a range of equivalents, and while the present invention cannot be said to be of the pioneer class in the sense that the one involved in the case of Morley Sewing Machine Co. v. Lancaster, 129 U.S. 263, 9 S.Ct. 299, 32 L.Ed. 715 was, it does represent an important step forward in the art and is entitled to a reasonable range of equivalents.

9. The record shows that dimethyl phthalate and the plastifiers enumerated by Walsh are not identical in characteristics, but indeed few chemicals are. However, that is not the proper test. The rule to be followed is whether it performs the same function in substantially the same way in this particular combination, composition, or process. Dimethyl phthalate was a well known non-volatile plastifier. See publication "Moiters Plastiques Artificielles" by Clemit & Riviers, Exhibit R. When substituted for those plastifiers enumerated in Walsh it gave the product the same advantages and acted in substantially the same way as those plastifiers in producing a soft inner layer which absorbed and distributed shock and produced good adhesion. This court is convinced that the substitution by defendant of dimethyl phthalate for the plastifiers enumerated in the claims was nothing more than a mere substitution of equivalents. That it did not enter into the combination in such a manner as to change the effect or result thereof.

10. Concluding that the plastifier employed by defendant is the full equivalent of that set forth in the claims it next becomes necessary to examine into and determine the effect of the limitation, 50% to 75% of plastifier.

11. Defendant's products in question are Exhibits B to C, and it appears that Exhibit B employs 68.4% of dimethyl phthalate which clearly falls within the range of 50% to 75% plastifier set forth in the claims, and being otherwise covered by them is, therefore, clearly an infringement.

12. It is contended, however, that the other Exhibits C to G, inclusive, containing slightly greater amounts of plastifier than that set out in the claims, avoid infringement, and patentee having consented to limit the claims in the prosecution of the application before the Patent Office, is now estopped to contend for a broader construction of them. The rule appears to be that having inserted limitations in a claim to secure its allowance over the prior art, relied upon by the Examiner in the rejection of the claim, the patent holder is estopped to later contend for such a broad construction of the claim as would have the effect of disregarding such limitations and giving it the same scope as the rejected claim.

13. However, a careful examination of the file wrapper of the Walsh patent reveals that after applicant had limited his claims to a plastifier content of at least 50% they were finally rejected by the Examiner. The ground being that applicant was attempting to introduce new matter in the claims and that they were thus made unpatentable over the prior art. Then pursuant to an interview with the Examiner, an amendment was filed wherein it was pointed out that no new matter had actually been introduced and that the references did not anticipate the claims. In response to an objection regarding the breadth of the claims, applicant amended them to set the upper limit of the plastifier at 75%. It does not appear that the fixing of the upper limit at 75% was nec-

cessitated by the prior art. Nor does it appear that to construe the claims sufficiently broad so as to cover such colorable evasions as Exhibits C to G, inclusive, would have the effect of broadening the claims to their original scope such as is prohibited by the doctrine of estoppel. The court is fully aware of the general rule of estoppel by acquiescence in amendments forced on an applicant by the Patent Office in the rejection of claims on prior art. The court is of the opinion that the present case clearly falls within the exception heretofore indicated and which has been recognized in numerous cases. It is also well established that slight departures from the limits set out in a claim does not avoid infringement. It results that the slight variations in plastifier content of Exhibits C to G, inclusive, cannot serve as a justification for the appropriation of the very heart of this invention or to avoid infringement by defendant.

14. The court is put at ease in reaching this conclusion as being just and right as it fully appears that the course of defendant's conduct relative to this situation indicates that defendant was making efforts to appropriate plaintiff's invention while at the same time attempting to avoid the claims of the patent and the legal consequences of such acts. The defendant, while dealing with plaintiff's representatives and securing all of the information possible from them, was secretly engaged in developing a similar product which it was hoped would avoid the patent, and yet contain all of the advantages and characteristics of plaintiff's invention.

15. Finding infringement of the claims by Exhibits B to G, inclusive, it now becomes necessary to inquire into the validity of those claims. In this connection defendant contends, and cites prior art to establish, that it is old to use a cellulose derivative such as cellulose acetate and cellulose nitrate in the laminated glass art and that the use of the Walsh plastifiers was old. Even if this be true it is not sufficient to establish that invention is lacking in the present claims. Almost every combination is made up of old elements. In those instances the invention resides not in the elements individually, but in the combination of those elements and their cooperation with each other to produce a new result.

16. With the exception of Moss, the many patents and publications cited by defendant do not disclose the combination defined in these claims nor do they produce the results accomplished by the combinations of the claims. It is easy to go back through the art and in the light of Walsh's disclosure select various patents and publications, each containing some element or teaching which might be ultimately combined to produce his invention. Invention, however, resides in recognizing the desirability of combining these substances in this manner and also that when so combined they will produce these new results.

17. Defendant contends that it was not new to use 50% to 75% plastifier but it cites no prior art which discloses the nonvolatile plastifier used in such a combination for this purpose. The Lindsey patents relied upon to teach the production of a yieldable inner layer relate not to the laminated glass art but to the fabrication of pieces of cotton fabric where the problems are entirely different and the art is nonanalogous.

18. The disclosure of the patent to Moss appears to be the only one which seriously threatens the validity of the patent in suit. The application from which the Moss patent matured was filed in the Patent Office on October 20, 1928, a few days before the Walsh application so that there is a prima facie presumption that Moss was the prior inventor of the common subject matter disclosed in the two applications. Plaintiff has introduced uncontradicted proof to establish that the date of the Walsh invention was prior to the filing date of Moss, but the defendant contends that this must be established beyond a reasonable doubt. This, however, may well be questioned in view of the fact that the applications in the two cases were copending and that in interference proceedings in the Patent Office to determine priority of invention between copending applications it is the uniform practice to require the junior parties to carry their dates back of the senior party's filing date only by a preponderance of the evidence. However, plaintiff has established his priority over Moss with such strong clear proof that there can be no reasonable doubt that he has carried his date of invention back of the filing date of Moss. Inferences to the contrary attempted to be drawn by defendant are believed to be without merit. The view that Walsh was the prior inventor of the subject-matter of his claims is further strengthened by the fact that

Moss, after disclosing this subject matter in his application, made no claim that he was the original inventor thereof. For these reasons it is clear that the Moss patent is not prior art.

19. There was a contention that the method claims of the Walsh patent should be limited to the formation of the plastic layer by the use of small pieces interposed in spaced relation between the sheets or plates of glass. However, this view of the invention of Walsh is too narrow and restricted, and this court does not feel justified in interpreting this invention as restricted to merely one narrow embodiment thereof.

20. Likewise the questions of adequate disclosure and utility are not serious ones. To satisfy the former it is only necessary to disclose the invention so that one skilled in the art may understand and practice it. Walsh having done this is not required to go further and anticipate improvements which may be made. The claims are clear, definite and unambiguous and do not fail to point out and distinctly claim the invention. Further, with respect to the latter, it appears that a great deal of confusion has arisen between utility and commercial success. It definitely appears that the invention functions properly for the purpose intended and is, therefore, not lacking in utility in the patentable sense. Utility could not be predicated solely on commercial success, since many items having no relation whatever to the invention may be controlling factors in determining commercial success. The instability of these factors makes commercial success a rapidly changing consideration which may be here today and gone tomorrow, and therefore, cannot be considered a reliable test of utility of invention.

21. There appears to be some contention that defendant may have improved upon plaintiff's invention, and may have increased the superiority of the inner layer over those known in the prior art. This does not give it the right to graft its improvement upon Walsh's invention and appropriate that invention to its own use any more than it would authorize plaintiff to appropriate defendant's improvement, if any, to plaintiff's use.

### Conclusions of Law.

1. The disclosure of the Walsh patent clearly discloses to one skilled in the art how to practice the invention set forth in the foregoing paragraphs 3 to 7 inclusive, and the claims in suit are not limited to the formation of the plastic layer by the use of small pieces.

2. Claims 1 and 3 to 7 of the Walsh patent No. 1,936,044 are good and valid in law and are infringed by the defendant.

3. All exceptions filed by the parties, and all conclusions of the Master not in conformity with the opinion of this Court are overruled, and those in conformity herewith are sustained.

4. Plaintiff is entitled to the usual interlocutory decree upholding the claims in suit, finding infringement thereof, and directing an injunction and accounting.